**SMITH v. NEW ORLEANS PUBLIC SERVICE, Inc.**

**No. 16423.**

Court of Appeal of Louisiana. Orleans.

May 3, 1937.

Geo. M. Brooks and Maurice R. Woulfe, both of New Orleans, for appellant.

M. A. Woodruff and Ivy G. Kittredge, both of New Orleans, for appellee.

JANVIER, Judge.

At about 6:05 o'clock p. m. on October 18, 1933, William L. Smith, 41 years of age, a pedestrian, received physical injuries by coming into contact with an electric street-car of defendant company on Royal street about midway between Louisa and Clouet streets. He alleges that he was not at fault and that the responsibility lies wholly with defendant because of negligence of the motorman of the streetcar. He charges that, while he, "a blind man, was standing on Royal Street between Clouet and Louisa Streets at a place designated for pedes-. trians, * * * a * * * car * * *, instead of stopping for plaintiff's signal, suddenly speeded up without warning * * * and struck your petitioner, and threw him violently to the ground."

Defendant denies that the place at which the accident occurred was "a place designated for pedestrians" and contends that, on the contrary, there was no reason for the motorman to anticipate that any person would attempt to board a streetcar at that point, and defendant especially denies that the motorman was in any way at fault, alleging that Smith, prior to the accident, had not been standing on the street where he would have been visible to the motorman, but was, on the contrary, hidden from view by an automobile which was parked alongside the curb and that, just as the streetcar, running at a speed of about 18 or 20 miles an hour, reached a point 10 or 12 feet away, he emerged into the street, having previously been screened by the automobile, and walked into the side of the passing streetcar near the second or third window.

In the court below there was judgment for defendant, and plaintiff has appealed.

Royal street is a thoroughfare of moderate width, having in its center a single line of track. There is room on each side of a passing streetcar for automobiles to park alongside the curb, but, between such automobiles and a car, there remains a clearance of about 2, or, at most, 3 feet. The record shows that at the point at which Smith was injured there is no stopping place designated either intentionally or by custom and, in fact, Smith practically abandoned his position on this point by stating that he did not know whether there was a "stop" at that point, but that he assumed that there was because, in another section of the city, the railway company permitted its cars to stop at a certain point between corners. The record also shows that it was dark at the time and that the nearest street lights are at the corners of Louisa and Clouet streets, the nearest of which is more than 200 feet from the scene of the accident. Plaintiff is shown to have been totally blind for about 26 years—so much so that he cannot distinguish light from darkness. But it appears that he was very familiar with the neighborhood and that he had often boarded streetcars at one or the other of the adjacent corners.

It is contended by plaintiff that there were no automobiles parked which would have acted as a screen to the view of the motorman, but the record shows conclusively that there were at least two alongside the curb and that Smith walked from between them just as the car approached. One of the witnesses, Picone, testified that he saw Smith leave the sidewalk and that at that time the car was about 100 feet away, and plaintiff points to this evidence as proof that the motorman should also have seen him. But Picone, on the other side of the street, was directly opposite Smith, who was not screened from his view by the automobile as he was from the view of the motorman. The motorman and at least one other person (Mathews) on the streetcar saw Smith just as he emerged from behind the automobile and both state that the moment he appeared the motorman, who had already been sounding his gong, rang it again and simultaneously applied his brakes.

Plaintiff contends that the car did not stop as soon as it should have stopped, the evidence showing that there was required a distance of about 94 feet. But those who are familiar with such matters testify that that is the distance required by such a car when traveling at a speed of 18 to 20 miles an hour, and we must conclude from this that the car made a reasonably good stop, though we cannot see that it is of any great importance, since it obviously would have been impossible for it to have stopped within the 10 or 12 feet remaining when Smith emerged from the obscurity furnished by the automobile.

At any rate, the speed of the car is not shown to have been excessive. It had been reduced when the car crossed Louisa street,

160

and the record shows that when the accident occurred it had not yet been increased to its maximum.

Plaintiff also points to the testimony of Mathews, a student motorman who was standing behind Means, the motorman who was operating the car. He said that he saw a stick in Smith's hand as he emerged from behind the parked car and this statement is pointed to as indicating that the motorman should have known that Smith was blind. But Mathews stated that at that time Smith was only 10 or 12 feet away from the streetcar, when it was too late for anything to be done. In fact, Means, the motorman, also admitted seeing a stick in Smith's hand, but at that time there was nothing that he could do to avoid the accident.

■■ Defendant concedes, as of course it must, that the operators of vehicles on public streets must be especially careful where blind or infirm persons or children are concerned, but they maintain that this extraordinary duty is placed on such operators only when such persons are seen, or where there is reason to anticipate their presence. Here there was no reason whatever for the motorman to anticipate that any person would leave the sidewalk at night near the middle of the block and would emerge from behind a parked automobile and walk into the side of a passing street car.

A review of the record shows not the slightest negligence on the part of the motorman.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.